# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOWSER CADILLAC, LLC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1149 |
| ) | Judge Nora Barry Fischer |
| GENERAL MOTORS CORPORATION ) | |
| and SAAB CARS USA, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM ORDER**

Currently pending before this Court is Plaintiff Bowser Cadillac's (hereinafter "Bowser") Motion for Leave to File an Amended Complaint [39]. Pursuant to Federal Rule of Civil Procedure 15(a), said Motion seeks to add a breach of contract claim against Defendant General Motors Corporation (hereinafter "GM") for breach of the contractual duty of good faith and fair dealing (Docket No. 39).

### **I. Procedural History Pertinent to Bowser's Motion for Leave to Amend**

On August 21, 2007, Bowser originally brought this action against GM and Saab Cars USA, Inc. (hereinafter "Defendants"), based upon an allegation that Defendants unlawfully and improperly attempted to exercise a contractual right of first refusal with respect to a franchise agreement with P&W Foreign Car Service, Inc. d/b/a P&W Saab ("P & W Saab").[1] (Docket No. 1). Defendants filed a Motion to Dismiss the Complaint on September 18, 2007. (Docket No. 4). On November 15, 2007, this Court entered a Case Management Order, providing that all motions to amend

---

[1] This Court notes that, in the instant motion, Bowser refers to P & W Saab as "P & W Foreign Cars, Inc. d/b/a P & W Saab." (Docket No. 39 at ¶ 4).

1

pleadings or motions to add parties shall be filed on or before December 15, 2007. (Docket No. 22). On January 18, 2008, this Court denied Defendants' Motion to Dismiss in a Memorandum Opinion in which this Court held that Bowser had sufficiently pled and set forth facts in support of counts one through five of its Complaint permitting this case to proceed through discovery. (Docket No. 27). Thereafter, Defendants filed a Motion for Reconsideration on February 1, 2008, which this Court denied on February 22, 2008. (Docket Nos. 30, 35). Following a status conference on May 1, 2008, this Court issued an Order permitting Bowser to file a Motion for Leave to File an Amended Complaint. (Docket No. 39). On May 27, 2008, GM filed its Response to said Motion arguing undue delay, futility and prejudice. (Docket No. 42). Subsequently, on May 29, 2008, during a status conference, this Court granted Bowser's Motion to File a Reply Brief which was filed on June 6, 2008. (Docket Nos. 44, 45). This matter was fully briefed on June 16, 2008 when Defendants filed their Sur-Reply Brief. (Docket No. 48).

## II. Facts Pled by Bowser

Bowser claims that it learned certain facts throughout the course of discovery giving rise to a claim for breach of contract. Specifically, Bowser claims that through discovery it learned that GM completely integrated the Saab line into GM's corporate hierarchy and re-issued dealer agreements wherein GM became the contracting party with all of its Saab line make dealers, including P & W Saab. (Docket No. 39 at ¶ 4). In addition, Bowser states it learned of certain facts relating to GM's dislike of Bowser, its close relationship with another Pittsburgh dealer, its contact and encouragement of P&W Saab to sell its dealership to Bowser allegedly thereby creating an opportunity to effectively terminate the P&W Saab dealership point. *Id.* at ¶ 5. Hence, Bowser now seeks to amend its Complaint to include a claim based on breach of contract. *Id.* at ¶ 6.

In its proposed Amended Complaint, Bowser asserts that GM encouraged a buy-sell between P&W Saab and Bowser in an effort to manipulate the parties. (Docket No. 45 at 4). Bowser further asserts that this created a situation in which GM could effectively eliminate one of the existing Saab dealership points in the Pittsburgh market by exercising its right of first refusal once the buy-sell between P&W Saab and Bowser was submitted. *Id.* Bowser contends that GM failed to disclose its true intentions to Bowser, misled Bowser as to its true intentions, and improperly favored its relationship with another dealer ("Cochran") over its existing contractual relationship with Bowser by exercising a right of first refusal without proper and/or adequate investigation or market analysis. *Id.* at 5.

**III.     Standard**

The Federal Rules of Civil Procedure are to be construed and administered "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Federal Rules of Civil Procedure also provide that courts should freely give leave to amend when "justice so requires." Fed. R. Civ. P. 15(a)(2). While courts should not grant leave to amend automatically, the circumstances under which Rule 15(a) permits denial of leave to amend are limited. William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 8:400 (2008). Denial of leave to amend is disfavored; and a district judge should grant leave absent a substantial reason to deny. Moore's Federal Practice, 3 ed., vol. 3, 15.14(1); see also *Shane v. Fauver*, 213 F.3d 113, 115-117 (3d Cir. 2000). Presumably, the liberal ethos of amendment means that the party opposing amendment bears a burden of production to come forward with reasons or evidence to deny leave to amend. Moore's Federal Practice, 3 ed., vol. 3, § 15.15(2); *see also Heyl & Patterson Intern., Inc. V. F. D. Rich Housing of Virgin Island, Inc.*, 663

F.2d 419, 425 (3d Cir. 1981) ("Courts have shown a strong liberality...in allowing amendment under Rule 15(a)").

Whether to grant a party leave to amend a pleading is within the sound discretion of the trial judge. This Court has discretion to deny such a request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice the other party. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

Courts often deny leave to amend a pleading when the moving party either knew or should have known the facts on which the amendment is based when drafting the original pleading, but failed to include such facts in the original pleading. William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 8:406 (2008) (citing *Hoover v. Blue Cross & Blue Sheild of Alabama*, 855 F.2d 1538, 1544 (11th Cir. 1988)). The longer the delay in seeking to amend, the greater the risk that leave will be denied because of prejudice to the opposing party. *Id.* However, most courts hold that undue delay alone, unless unexplained and egregious, is not enough for a court to deny a motion to amend. *Id.*

"Futility" challenges an amendment's legal sufficiency. *Foman*, 371 U.S. at 182. In assessing futility, courts apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); s*ee also Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir. 1988) ("Futility is determined by the likelihood that the content of the amendment will survive a renewed motion to dismiss"). Accordingly, the United States Court of Appeals for the Third Circuit has noted that "an amendment would be futile when the complaint, as amended, would fail to state a claim

4

upon which relief could be granted." *Id.*

Prejudice to the opposing party is "the touchstone for the denial of leave to amend." *Cornell and Company, Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978). However, to justify denial of leave to amend, the prejudice must be substantial. William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 8:424.2 (2008) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). "Such prejudice ordinarily is not considered to have occurred unless the Motion is made during or after the actual trial." *Jenn-Air Products Co. v. Penn Ventilator*, 283 F.Supp. 591, 594 (E.D.Pa. 1968). The Court will address each of the above tests in turn.

**IV. Analysis**

**A. Bowser's proposed Amended Complaint does not demonstrate undue delay, bad faith, or dilatory motive**

As stated above, GM opposes Bowser's Motion arguing that its Motion and proposed amendment are unduly delayed. In support of its position, GM points to the Case Management Order which stated that parties should file all motions to amend on or before December 15, 2007. (Docket No. 22). Hence, GM argues that said amendment is untimely. (Docket No. 42 at 5). Further, GM contends that Bowser could have made this claim before the Case Management Order's December 15, 2007 deadline, but that it waited until the final day of discovery to seek leave to amend its Complaint in an attempt to secure an unfair advantage. *Id.* at 7.

Although Bowser's Motion to Amend certainly was filed late in the discovery process and beyond the Court's deadline for amendments, it was filed as a result of purportedly newly discovered

information that was not known to Bowser at the time Bowser filed its original pleading.[2] As noted above, Bowser claims it learned the following:

> ... that GM completely integrated the Saab line into GM's corporate hierarchy and re-issued dealer agreements wherein GM became the contracting party with all of its Saab line-make dealers, including P & W Saab. In addition, Bowser learned of certain facts relating to GM's dislike of Bowser, its close relationship with another Pittsburgh dealer, its contact and encouragement of P&W Saab to sell its dealership to Bowser thereby creating an opportunity to effectively terminate the P & W Saab dealership point, along with certain other facts upon which the present breach of contract claim is based.

(Docket No. 39 at 2). In its Reply Brief, Bowser elaborated as follows:

> Bowser also learned that the Cochran Auto Group ("Cochran") (which was awarded a Saab franchise by GM in late 2003), through its dealer principal, Robert Cochran, began to complain to GM that it should close one of the three (3) Saab dealerships in the Pittsburgh market. Bowser also learned that for the period of time leading up to the events at issue in this case, Cochran maintained a close relationship with GM through his service on various GM dealer councils, and regularly communicated with the highest levels of GM's North American executive management, including Mark LaNeve, Vice President in charge of GM sales and marketing throughout the United States; Brent Dewar, who during the time periods at issue was in charge of all GM regional operations in the United States; and GM's Northeast Regional Manager, Scott Mackie. Through discovery, Bowser also learned of Dewar's dislike of Bowser. Indeed, Dewar told GM Northeast Regional Manager, Mackie, that he was not a fan of Bowser and would not have approved Bowser's initial acquisition of the Tomsic Cadillac franchise in 2004. Bowser also learned that GM approached P&W and encouraged P&W to sell its Saab dealership. Finally, Bowser learned that Cochran, and the other Pittsburgh area Saab dealer - the

---

[2] On January 25, 2008, Bowser initiated formal discovery by serving GM with its initial interrogatories and requests for production of documents, to which GM responded on February 27, 2008. (Docket No. 45 at 2). The parties then proceeded with the taking of fourteen (14) depositions beginning on March 19, 2008. *Id.* at 3. The final deposition, that of Robert Cochran, was taken on April 28, 2008. *Id.*

> Wright Auto Group - each contributed approximately $150,000 to
> effectuate GM's purchase of the P&W Saab franchise and parts.

(Docket No. 45 at 4).

The Court is mindful that under Federal Rule of Civil Procedure 15, courts are instructed to grant leave to amend when justice requires, not when it is ideal. Fed. R. Civ. P. 15(a)(2). Although not ideal, this Court believes that justice is best served by permitting the Amendment. Finally, the Court is not convinced that Bowser delayed in bad faith or with dilatory motive. *See In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Accordingly, the Court finds that Bowser's proposed Amended Complaint should not be refused for undue delay, bad faith or dilatory motive.

### B. Bowser's proposed Amended Complaint is not futile

GM asserts that Bowser is not entitled to Amend to add its proposed breach of contract claim because Bowser's interpretation of the contractual language ("Dealer Agreement"), that an implied duty to act in good faith and fair dealing exists, is undermined by several succinct clauses in the Agreement implicating no such obligation, making such amendment futile. (Docket No. 42 at 7). Specifically, GM argues that Bowser must cite a contract provision that actually "brings the implied good faith covenant into play." (Docket No. 42 at 7). In response, Bowser cites the *Hubbard* Court's acknowledgment that Michigan courts hold contracting parties to an implied good faith covenant "where a party to a contract makes the manner of its performance a matter of its own discretion." *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989) (citing *Burkhardt v. City National Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. App. 1975) (holding that when a party has discretion as to the manner of its performance, "the law does not

hesitate to imply the provision that such discretion be exercised honestly and in good faith")).

In support of its position, Bowser first points to the "Purpose of Agreement" section of the Dealer Agreement which states "the purpose of this Agreement is to promote a relationship between GM and its dealers which encourages and facilitates cooperation and mutual effort to satisfy customers, and permits GM and its dealers to fully realize their opportunities for business success." (Docket No. 45-2 at 3). Currently, Bowser is both a dealer and a prospective purchaser. As such, Bowser argues the Purpose of the Agreement applies to GM's dealings with Bowser, as it does to P&W Saab as dealer/seller. Further, Bowser points out that the agreement states that said mutual dependance between GM and its dealers "requires a spirit of cooperation, trust and confidence." *Id.* Finally, Bowser notes that GM concedes that Michigan law recognizes an implied covenant of good faith and fair dealing with respect to the enforcement and performance of contracts. (Docket No. 42 at 7).

It appears that Michigan courts favorably cite and indeed rely on the Restatement of Contracts' definition of good faith and fair dealing.[3] *See Burton v. William Beaumont Hosp.*, 373 F.Supp. 2d. 707, 718 (2005); *see also Ferrell v. Vic Tanny Int'l Inc.*, 357 N.W.2d 669, 672 (Mich. App. 1984). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate

---

[3] Similarly, Pennsylvania courts favorably cite and indeed rely on the Restatement of Contracts' definition of good faith and fair dealing. *John B. Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 705 (Pa. Super. 2003) (noting that the Commonwealth has accepted the principle in Restatement (Second) of Contracts § 205 that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement").

community standards of decency, fairness or reasonableness."[4] RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (1981). Considering the Restatement's definition of good faith against the Dealer Agreement, this Court reads the language: "spirit of cooperation, trust and confidence," to connote an implied duty of good faith between GM and Bowser. (Docket No. 45-2 at 3).

Bowser also insists that since the Dealer Agreement does not state *how* GM is to perform its obligations, all of GM's actions are discretionary; hence, there is an implied good faith covenant embodied in this agreement. (Docket No. 45 at 10). Accordingly, the Court next turns to Section 4.3 of the Agreement titled Establishment of Additional Dealers which states: "General Motors reserves the right to appoint additional dealers but General Motors will not exercise this right without first analyzing dealer network planning considerations with respect to the Line-Make consideration." (Docket No. 45-2 at 5). As the Court reads this Section, GM is accorded some discretion in its appointment of new dealers.

Since at least 1974, Michigan courts have imposed a duty of good faith in performing discretionary duties. Mantese & Newman, 76 Mich. B.J. 1190, 1191 (1997). In addition, the Michigan Court of Appeals has held "where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the provision that such discretion must be exercised honestly and in good faith." *Burkhardt v. City National Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. App. 1975); *see also* 3A Corbin, Contracts, § 644, pp. 78-84.

---

[4] Likewise, Black's Law Dictionary cites the Restatement's definition of good faith and fair dealing in its definition of good faith. BLACK'S LAW DICTIONARY (8th ed. 2004) (defining good faith as "a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage").

Moreover, this Court notes that the Restatement (Second) of Contracts § 205 provides guidance in determining good faith performance. It states "subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d (1981).

Pursuant to the Dealer Agreement, disputes arising out of the parties' contractual relationship are governed by Michigan law. (Docket No. 42 at 7). This Court acknowledges that Michigan law does not imply the good faith covenant where parties have "unmistakably expressed" their respective rights. *Hubbard Cheverolet Co. v. General Motors Corp.*, 873 F.2d 873, 877 (Mich. App. 1989) (citing *Bushwick-Decatur Motors v. Ford Motor Co.*, 116 F.2d 675 (2d Cir. 1940) (applying Michigan law)). Instead, the implied covenant of good faith and fair dealing essentially serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms. *Id.* In *Hubbard*, the court found express clauses in a contract that excluded the good faith covenant application in GM's decisions regarding relocation of dealerships. *Id.* at 878. The *Hubbard* court concluded that the power of termination at will was "unmistakably expressed" in the contract. *Id.* As such, the *Hubbard* court could not find that the parties had a limitation of good faith in mind when drafting the contract. *Id.*

Unlike the *Hubbard* court, this Court does not find that GM "unmistakably expressed" terms that specifically excluded an implied duty of good faith in its agreement with Bowser. To the contrary, the Court finds that the language of the Dealer Agreement omits terms and is ambiguous. In Michigan (as in Pennsylvania), when interpreting a contract where the language is ambiguous, courts are to construe such ambiguities against the drafter of the contract. *Klapp v. United Ins.*

10

*Group Agency, Inc.*, 663 N.W.2d 447, 470 (Mich. 2003). Here, the drafter of said contract is GM; hence, any ambiguity in the contract is construed against it.

Moreover, while Michigan courts do not define "discretion," legal scholars suggest that discretion arises from a lack of clarity or from an omission in the express contract. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv.L.Rev. 369, 380 (1980). In such cases, the dependant party must rely on the good faith of the party in control. *Id.* Here, GM is the party in control and Bowser is the dependant party. Furthermore, in such cases, courts explicitly raise the implied covenant of good faith and fair dealing. *Id.* Thus, contracts are interpreted in light of an obligation of good faith performance. *Id.*

Here, this Court finds that the Dealer Agreement lacks clarity as to the rights of a dealer which is also a prospective purchaser. In addition, the Agreement affords discretion to GM. Further, the Court finds that Bowser, as the dependant party, relied on GM, the party in control, to perform in good faith. Accordingly, the Court finds Bowser's proposed contract claim has sufficient merit to proceed through discovery.

GM next argues that Bowser's proposed amendment is futile because Bowser is a prospective purchaser and the Dealer Agreement does not explicitly confer rights upon a prospective purchaser. (Docket No. 48 at 5). GM takes the position that even if a good faith duty exists, it is a duty contradicted by the Dealer Agreement as there is no language in said agreement that explicitly confers rights of any kind upon a prospective purchaser, i.e. Bowser. *Id.* GM highlights Article 12 of the Dealer Agreement particularly Section 12.3 and argues that it does not confer upon a prospective purchaser any right to limit GM's right of first refusal. *Id.* at 6. Therefore, GM argues said section prohibits Bowser from claiming that the Dealer Agreement limits GM's manner in

11

exercising its right of first refusal.[5] *Id.*

However, this section of the Agreement cannot be read in a vacuum. The Agreement must be read as a whole. *Century Surety Co. v. Charron*, 583 N.W. 486, 488 (Mich. App. 1998). As noted above, the Agreement requires a spirit of cooperation, trust and confidence. (Docket No. 45-2 at 3). It also speaks to the appointment of new dealers and the analysis GM must do. *Id.* at 5. If GM wanted to limit the effect of the agreement it drafted it could have done so by distinguishing between current dealers and dealers who are also prospective purchasers as in the instant case. Yet, it did not.

Furthermore, GM relies upon *Pung v. General Motors Corp.*, 573 N.W.2d 80 (Mich. App. 1997) to support this argument. Although similar to the present case, the Court finds that *Pung* is both factually and legally distinguishable. First, it is factually distinguishable as Bowser's claims rely on the Pennsylvania Board of Vehicles Act, not Michigan's dealer statute. Further, this Court has ruled that Bowser, as a dealer and a prospective purchaser, has standing to bring its claim under the Pennsylvania Board of Vehicles Act. (Docket No. 26 at 7). Secondly, *Pung* is legally distinguishable as it never discusses the issue of good faith and fair dealing. Hence, the Court declines to follow *Pung*, at this stage.[6]

Accordingly, for the reasons set forth above, this Court finds that Bowser's proposed breach of contract claim is not futile based on the record before this Court.

---

[5]

As this Court ruled in its Memorandum Opinion, whether GM is entitled to a right of first refusal is not the issue in this case. (Docket No. 26 at 10). The issue in this case is whether such right was effectively and timely exercised. *Id.*

[6]

This Court notes that *Pung* was handed down in 1997. GM could have rewritten its agreement to give *Pung* the impact GM apparently desires.

### C. Bowser's proposed Amended Complaint is not prejudicial to GM

GM contends that it will be unfairly burdened and, therefore, prejudiced as a result of Bowser's untimely filing of said Motion as it would cause undue delay. (Docket No. 42 at 6). Specifically, GM argues that it would suffer prejudice because the new claim would require additional discovery. *Id.* GM asserts that it "conducted discovery on the basis of the claims Bowser initially asserted. Because the discovery period was short, and the focus of the claims were limited to the time period involving Bowser's planned purchase of the Saab dealership, GM conducted no discovery concentrated on events that allegedly transpired prior to that time period." *Id.* As such, GM contends that if additional discovery is required it would be unfairly burdened and, therefore, prejudiced.

Even if GM is required to take additional discovery as a result of said amendment, "the adverse party's burden of undertaking [additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States ex rel. Mar. Admin v. Cont'l Illinois Nat'l bank and Trust Co. Of Chicago,* 889 F.2d 1248, 1255 (2d Cir. 1989). Moreover, Plaintiff has already offered to have its representatives submit to further depositions upon this Court's ruling and believes that said depositions could be completed in one day. (Docket No. 45 at 6). In this Court's estimation, any necessary additional questioning should be limited in scope. Further, additional deposition testimony could be secured by telephone, thereby reducing attorney fees and costs.

Accordingly, this Court finds that Bowser's Motion for Leave to Amend, i.e. to add a breach of contract claim, is not prejudicial despite its timing as any delay caused by additional limited discovery will not unfairly burden GM. *See Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

## V. Conclusion and Order

For the reasons set forth above, this Court **GRANTS** Bowser's Motion for Leave to File an Amended Complaint as said amendment is not unduly delayed, futile or prejudicial given the circumstances of this case [39]. In addition, this Court's disposition of any breach of contract claim to be asserted by Bowser furthers the aim of Federal Rule of Civil Procedure 1 which calls for the just, speedy, and inexpensive determination of every action and proceeding. Said Amended Complaint shall be filed on or before July 28, 2008. Any response to same shall be filed on or before August 17, 2008. The Court shall conduct a status conference on August 20, 2008 at 2:00 p.m.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

dated: July 18, 2008
cc/ecf: All counsel of record